UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID DeBIASI,

                           Plaintiff,                    No. 02-CV-71956-DT

vs.                                           Hon. Gerald E. Rosen

CHARTER COUNTY OF WAYNE, et al.,

                           Defendants.

_____/

OPINION AND ORDER REGARDING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     March 11, 2008         

PRESENT:  Honorable Gerald E. Rosen
                   United States District Judge

## I. INTRODUCTION

This is a reverse race and sex discrimination action brought by a former Wayne

County Sheriff's Department Lieutenant against his former employer, the Charter County

of Wayne, Michigan; the former Wayne County Sheriff, Robert Ficano; and the County's

Personnel Director, Mark Ulicny. The case is presently before the Court on Defendants'

Renewed Motion for Summary Judgment. After initial briefing and status conference

discussions with counsel, the Court directed supplemental briefing. The parties have

complied with the Court's directives and, accordingly, have filed supplemental briefs.

1

Having reviewed and considered the parties' briefs and supporting evidence, the Court has determined that oral argument is not necessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), Defendants' Motion will be decided on the briefs. This Opinion and Order sets forth the Court's ruling.

## II. PERTINENT FACTS

Plaintiff David DeBiasi is former member of the Wayne County Sheriff's Department. After receiving his B.A. Degree from Michigan State University in 1977, DeBiasi began his employment with Wayne County in May 1979 as a police officer with the Detroit Metropolitan Wayne County Airport Police Department. He became a member of the Wayne County Sheriff's Department in 1984 when the Airport Police Department was merged into the Sheriff's Department. During his career with the Sheriff's Department, DeBiasi participated in a number of special task forces and assignments, and received promotions to Sergeant, Lieutenant, and Executive Lieutenant.

In February 1985, at his request, DeBiasi was transferred to the Drug Enforcement Administration's Joint Task Force where he worked as an undercover narcotics officer. Then, in 1988, he was promoted to Sergeant. After spending two months in the Internal Affairs Unit, DeBiasi returned to the Narcotics Unit, and in January 1989, he was appointed as the commanding officer of the Metropolitan Narcotics Task Force. In March of 1992, DeBiasi became a member of the ATF Joint Task Force. He was promoted to Lieutenant in 1993 and to Executive Lieutenant in 2000. As Executive

Lieutenant, DeBiasi was in charge of the day-to-day operations of all of the narcotics and undercover units within the Sheriff's Department, including the various federal-state drug enforcement task forces.

On January 16, 2002, a notice was posted that the Wayne County Personnel/ Human Resources Department was accepting letters of interest from Sheriff's Department lieutenants interested in being considered for a promotion to Commander. The only requirement to apply for this promotion was that the applicant have 18 months seniority-in-grade as a lieutenant. DeBiasi, who is white, and 15 other applicants applied for the promotion. The racial and sexual composition of the applicant pool was as follows: 11 white males, one white female, two African-American males, and two African-American females. It is undisputed that each of the applicants met the 18-months-in-grade requirement. The Collective Bargaining Agreement between Wayne County and Plaintiff's Union, Wayne County Law Enforcement Supervisory Local 3317 (the "CBA") further provided that eligibility for promotion would be evaluated by the County Personnel Director and the Sheriff based upon the applicant's work record, education and experience. *See* CBA § 22.15.

Defendant Robert Ficano, then the Wayne County Sheriff, interviewed the applicants for Commander on February 18 and 25, 2002. On March 4, 2002, Ficano announced his decision -- he awarded the promotion to Lieutenant Pamela McClain, a black female.

Ms. McClain earned a Bachelor of Arts Degree from the University of Michigan in 1980 and a Juris Doctorate from the University of Detroit-Mercy Law School in 1995. She joined the Wayne County Sheriff's Department in 1984. During her tenure within the Department, Ms. McClain worked in a number of units including the Wayne County Jail Master Control Unit, Frank Murphy Hall of Justice Security Unit, and the Wayne-Macomb Auto Theft Task Force. She earned the rank of Detective in 1990 and was then assigned first, to the Enforcement Unit of the Friend of the Court, and then to the Internal Affairs Section. In November 1990, she was promoted to the rank of Sergeant and was assigned to the Jail Division where she was responsible for the training, evaluation and supervision of sworn and non-sworn police officers as well as the supervision of over 1200 inmates. In 1991, she transferred to the Internal Affairs Section. She was promoted to Lieutenant in 1996. In 1999, she was promoted to Executive Lieutenant and became the Administrative Lieutenant to the Divisional Commander at the Wayne County Jail. In May 2001, McClain transferred to the Civil Process/Felony Warrants Section of the Friend of the Court Enforcement Unit and then, in August of that same year, was assigned to the Sheriff's Department Executive Operations Unit. It was from her Executive Operations Unit position that Ms. McClain was promoted to Commander.

Plaintiff does not dispute that Ms. McClain was qualified for promotion to Commander. However, he maintains that McClain got the promotion instead of him because she is a black female.

Prior to the posting of the Commander's opening, Plaintiff exchanged e-mails with one of his superior officers, Chief Eric Smith. In these e-mails, Chief Smith expressed the opinion that he believed that Defendant Ficano was going to promote Ms. McClain because she was a black female and Defendant Ficano did not have any black female commanders. [*See* Plaintiff's Ex. 8.][1] Defendant Ficano was acting as Sheriff during the

---

[1] These e-mails stated as follows:

11/19/01 10:02 a.m. (from David DeBiasi to Eric Smith)

Hi Boss,

Sorry to bother you but I have no other source to research these rumors flying around. I was hoping you could shed some light on them. . . . The strongest one is that the Sheriff is going to make a commander in December. The name that keeps surfacing is Pam McClain because she would be the first black elevated to that rank. I have heard Wayne Wolf's name mentioned but several independent sources keep pointing toward McClain. Any insight into this? I have even heard it mentioned that two commanders might be made. Where in the heck would the money come from? . . . .

Dave

11/19/01 12:12 p.m. (from Eric Smith to David DeBiasi)

Only one commander's position. I told [Undersheriff] Watts that you were my guy, he wants Wolf. I don't see Wolf as having a chance. Pam is in the running as well. I see it as between you and Pam. Realistically I see Pam as having the edge because the Sheriff does not have a blk. female commander and he may have an election next yr. I will keep my word to you and do all that I can. I am here day by day.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

12/19/01 04:36 p.m. (from David DeBiasi to Eric Smith)

entire promotion process but was commencing a political campaign for the upcoming

election of County Executive.  Plaintiff contends that McClain was promoted in order to

ensure that Defendant Ficano could win over the black votes during the election.  While

Chief Smith told Plaintiff in one e-mail that Plaintiff was his candidate for the

commander's position, Chief Smith acknowledged that he had no power in influencing

the Sheriff's decision and also informed Plaintiff that Undersheriff Watts was supporting

---

Hi Boss,

> Heard some more rumors that I thought I would run by you since I am not
> in the inner circle of knowledge.  The word is that a req had been sent to
> Ulicney for the commanders position with McClain's name on it but that
> someone may have sent a letter to Ulicney challenging any commander's
> appointment because it has not been posted.  Is this true?

> The other rumor is that Wolf will be getting commander's pay as sort of a
> consolation prize.  I guess the bottom line is what is the status of this
> mess.?  This perpetual dangling carrot is beginning to wear me out after
> almost three years.  Is there any chance for me or am I being strung along
> here? . . .

Dave

01/02/02 12:47 (Eric Smith to Dave DeBiasi)

Dave,

> Like I indicated earlier in a previous e-mail, I am committed to you for the
> promotion.  Wayne is in the hunt as well as McClain.  I think that Pam has
> the edge as the Sheriff does not have a[n] african american female
> commander.  I have heard nothing about a requ being sent over, but I am
> not to[o] close to the loop anymore.  I heard that he will make some
> decision in Jan.  I'[m] still with you for whatever it's worth.

a different candidate.

Plaintiff also claims to have had a telephone conversation with Chief Smith in which Smith allegedly confirmed Plaintiff's suspicions concerning McClain's impending promotion to commander. Plaintiff claims that Smith told him on January 8, 2002 that he had had a conversation with Defendant Ficano in which Ficano told Smith that "he [Ficano] was going to promote McClain because he needs a B/F [black female] for the Detroit votes. The Chief [Smith] said had it not been an election year I [Plaintiff] would have been promoted." [Plaintiff's Ex. 9, p. 17.][2] Chief Smith, however, testified in his deposition that he "never had that conversation with the sheriff" and that he never made any such comments to Plaintiff. [Smith Dep., p. 29.]

As indicated above, in this action, Plaintiff is suing three defendants: Wayne County; former Wayne County Sheriff Robert Ficano; and Mark Ulicny, Personnel Director of Wayne County. In his Five-Count Amended Complaint, Plaintiff alleges that in failing to promote him, Defendants engaged in reverse race and sex discrimination in violation of 42 U.S.C. § 1983 (Count I), Title VII of the Civil Rights Act of 1964, as amended. (Counts II and III); and the Michigan Elliott-Larsen Civil Rights Act (Counts IV and V).

III. <u>DISCUSSION</u>

---

[2] This information is from a log which Plaintiff allegedly kept. *See* Plaintiff's Ex. 9. He testified in his deposition that he updated his log by recording events as they happen, and at the latest, at the end of each day. *See* DeBiasi Dep., p. 196.

## A.  STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper "'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  Fed. R. Civ. P. 56(c).

Three 1986 Supreme Court cases -- *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) -- ushered in a "new era" in the standards of review for a summary judgment motion.  These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[3]  According to the *Celotex* Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322.

After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment.  They are summarized as follows:

---

[3]"Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials."  10A C. Wright, A. Miller, M. Kane, <u>Federal Practice & Procedure</u>, § 2727, at 35 (1996 Supp.).

* The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

* The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

* The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

* The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Betkerur v. Aultman Hospital Association*, 78 F.3d 1079, 1087 (6th Cir. 1996). *See also, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). The Court will apply the foregoing standards in deciding Defendants' Motion for Summary Judgment in this case.

B.    PLAINTIFF'S TITLE VII CLAIMS AGAINST INDIVIDUAL DEFENDANTS
      FICANO AND ULICNY WILL BE DISMISSED

As an initial matter, although not addressed by the parties, the Court finds that Defendants Ficano and Ulicny cannot be held individually liable under Title VII. In *Wathen v. General Elec. Co*., 115 F.3d 400, 405 (6th Cir.1997), the Sixth Circuit held "[A]n individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." Based upon an examination of the

statutory scheme and remedial provisions of Title VII, the *Wathen* court concluded that Congress did not intend to provide for individual employee/supervisor liability under the federal statute. Rather, the court determined that the term "agent" was included in the statutory language merely "to incorporate *respondeat superior* liability into the statute." 115 F.3d at 406. Therefore, Plaintiffs' Title VII claims against Defendants Ficano and Ulicny will be dismissed.[4]

C.  *PRIMA FACIE* PROOF OF DISCRIMINATION

It is well-established that the burden is on an employment discrimination plaintiff -- under both federal and Michigan law -- to establish a *prima facie* case of discrimination. *See Lautermilch v. Findlay City Schools*, 314 F.3d 271, 275 (6th Cir. 2003), *cert. denied*, 540 U.S. 813 (2003); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1972); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 148, 156 (1981); *Carden v. General Motors*, 156 Mich. App. 202, 210 (1986), *app. denied*, 428 Mich. 891 (1987).

A Title VII plaintiff may establish a *prima facie* case of discrimination either by presenting direct evidence of intentional discrimination by the defendant, *Terbovitz v. Fiscal Court*, 825 F.2d 111, 114-15 (6th Cir.1987) (citing *Trans World Airlines, Inc. v.*

---

[4]  There is no similar prohibition against individual liability for individuals in supervisory positions under the Michigan civil rights statutes. *See Elezovic v. Ford Motor Co.*, 472 Mich. 408, 419-26, 697 N. W. 2d 851, 857-61 (2005) (holding that under the Michigan Elliott-Larsen Civil Rights Act, supervisors are subject to individual liability, as the corporate employer's agent).

10

*Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 621-22 (1985)), or by showing the existence of circumstantial evidence which creates an inference of discrimination.  *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824.  *See Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1246  (6th Cir. 1995).[5] Similarly, an employment discrimination plaintiff can establish his claim of unlawful discrimination under Michigan law either (1) by producing direct evidence of discrimination or (2) by presenting a *prima facie* case of discrimination in accordance with the *McDonnell Douglas/Burdine* framework.  *Hazle v. Ford Motor Co.*, 464 Mich. 456, 462-63, 628 N.W.2d 515, 520-21 (2001); *Town v. Michigan Bell Telephone Co.*, 455 Mich. 688, 694-95, 568 N.W.2d 64, 67-68 (1997). Plaintiff here contends that he can make out his claim of discrimination under both theories.

a.      Plaintiff Has Failed to Produce Direct Evidence of Reverse Race or Sex
        Discrimination

A plaintiff may establish intentional discrimination on the part of his or her employer by presenting credible, direct evidence of discriminatory intent on the part of the decision-maker.  *See Terbovitz v. Fiscal Court of Adair County*, 825 F.2d at 114-15; *Hazle v. Ford Motor Co*., 464 Mich. at 462-63.   "Direct evidence" of discrimination is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."  *See Talley,* 61 F.3d at 1268; *Hazle*

---

[5]  The proof required to establish a discrimination claim under Title VII is also the proof required to prove a Section 1983 discrimination claim.  *See Lautermilch v. Findlay City Schools*, 314 at 275.

*v. Ford Motor Co.,* 464 Mich. at 462, 638 N.W.2d at 520 (quoting *Jacklyn v. Schering-*
*Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)). When a
plaintiff can cite direct evidence of discrimination, the *McDonnell Douglas/Burdine*
shifting burdens of proof are not applicable. *Trans World Airlines, Inc. v. Thurston*, 469
U.S. 111, 121, 105 S.Ct. 613 (1985); *DeBrow v. Century 21 Great Lakes, Inc*., 463
Mich. 534, 539, 620 N.W.2d 836, 838 (2001) . The presentation of direct evidence is
generally sufficient to submit the plaintiff's case to the jury. *Harrison v. Olde Financial*
*Corp*, 225 Mich. App. 601, 610; 572 NW2d 679 (1997). However, to withstand
summary judgment, the plaintiff's evidence must be admissible. Fed. R. Civ. P. 56(e).
Inadmissible hearsay evidence cannot be considered. *Hartsel v. Keys*, 87 F.3d 795, 803
(6th Cir. 1996), *cert. denied*, 519 U.S. 1055 (1997); *Jacklyn v. Schering-Plough*
*Healthcare Prod. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999).

Plaintiff in this case relies upon his personal log notes reflecting a telephone
conversation he claims to have had with Chief Eric Smith on January 8, 2002 as "direct
evidence" of reverse race and sex discrimination. Plaintiff wrote in his log that Smith
told him on January 8, 2002 that he had had a conversation with Defendant Ficano the
previous Friday in which Ficano allegedly told Smith that "he [Ficano] was going to
promote McClain because he needs a B/F [black female] for the Detroit votes. The Chief
[Smith] said had it not been an election year I [Plaintiff] would have been promoted."
[*See* Plaintiff's Ex. 9, p. 4.] As indicated above, Smith categorically denies having had

any such conversation with Plaintiff and denies having made the statements attributed to him. [Smith Dep., p. 29.]

First of all, statements of persons who were not involved in the employment decision at issue do not constitute "direct evidence" of discrimination. *Carter v. University of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003). In *Carter*, the Sixth Circuit held that a university provost's statements that the dean of the plaintiff's department was racist did not constitute direct evidence of race discrimination since the vice provost played no part in the decision to terminate the plaintiff's employment.

Similarly, in this case, Chief Smith was not involved in the decision to promote Pam McClain to the commander's position. [*See* Smith Dep., pp. 10, 23, 58-60.] Smith testified that he was not involved in the posting of the position, he was not involved in the interview process, and he was not involved in assisting the sheriff in developing selection criteria. *Id.* p. 10. Smith further testified that the sheriff never asked him for his preference of candidates and never solicited any input whatsoever from him concerning the position. *Id.* p. 23. He explained that several years earlier, he disagreed with the sheriff relative to a commander the sheriff appointed and was told quite bluntly by the sheriff that it was his [the sheriff's] selection. *Id.* pp. 59-60. Since then he was no longer "in the loop." *Id.* Pursuant to *Carter*, because he was not involved in the decision to promote Pam McClain, Smith's statements cannot constitute "direct evidence" of discrimination.

13

The decision maker in this case was Defendant Ficano. Thus, statements made by him can constitute direct evidence. However, the statement by Ficano that Plaintiff seeks to rely upon -- that he was going to promote Pam McClain because he needed to hire a black female to curry favor with Detroit voters -- is buried beneath several layers of hearsay.[6] Ficano allegedly made the statement to Chief Smith, who allegedly related it to DeBiasi, who recorded what Smith allegedly told him in his log. Evidence containing multiple levels of hearsay is inadmissible for its truth unless each layer, analyzed independently falls within an established hearsay exception or is treated as nonhearsay. Fed. R. Evid. 805; *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1081 (6th Cir. 1999).

Defendants argue that Plaintiff's log cannot be considered because it is inadmissible hearsay. As indicated above, inadmissible hearsay evidence cannot be considered on summary judgment. *Jacklyn, supra*. However, at the summary judgment stage, the focus is not on the admissibility of the evidence's form. *Celotex v. Cattrett, supra*, 477 U.S. at 324; 105 S.Ct. at 2553 (explaining that in requiring the nonmoving party to produce evidence to withstand a motion for summary judgment, "[w]e do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial"); *see also Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003), *cert. denied*, 541 U.S. 937 (2004) ("At the summary judgment stage we do not focus on

---

[6] Ficano's statement itself is an admission by a party opponent and not hearsay. *See* Fed. R.Evid. 801(d)(2)(A).

the admissibility of the evidence's form.")

The majority of circuits interpret *Celotex* to permit consideration of evidence submitted at summary judgment in non-admissible form when the evidence "will be reduced to admissible form at trial." *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir.1996)(allowing otherwise admissible evidence to be submitted in inadmissible form at the summary judgment stage, though at trial it must be submitted in admissible form). *See also Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365 (D.C. Cir. 2000) (holding that any evidence considered by a court at the summary judgment stage "must be capable of being converted into admissible evidence." *Id.* at 1369); *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3rd Cir. 1990), *cert. denied*, 499 U.S. 921 (1991) (holding that hearsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present the evidence through direct testimony, i.e., in a form that would be admissible at trial); *cf., Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990) ("[A]bsent a showing of admissibility - and none was forthcoming here - appellant may not rely on rank hearsay . . . to oppose proper motions for summary judgment.") Thus, the Court need not decide whether DeBiasi's log itself is admissible. Instead the focus is on the admissibility of its contents. *Id.* If the contents of DeBiasi's log could be presented in an admissible form at trial, the Court may consider the log's contents in deciding Defendants' summary judgment motion. *Fraser v. Goodale, supra*, 342 F.3d at 1037.

In *Fraser*, the plaintiff relied upon her diary in opposing her employer's motion for summary judgment on her ADA claim.  This diary detailed the effects that her diabetes had on her daily life.  The defendant argued that the diary was hearsay evidence, and, therefore, could not be considered by the court.  The Ninth Circuit disagreed.  "It would be sufficient if the contents of the diary are admissible, even if the diary itself is inadmissible."  342 F.3d at 1036.  The court then examined the contents of the diary and found:

> The contents of the diary are mere recitations of events within Fraser's personal knowledge and, depending on the circumstances, could be admitted into evidence at trial in a variety of ways.  Fraser could testify to all the relevant portions of the diary from her personal knowledge.  Fed. R. Evid. 602.  If she forgets the exact dates or the details of the events, she may be able to use the diary to refresh her recollection.  Fed. R. Evid. 612. . . .  If the diary fails to refresh her recollection, she might still be able to read the diary into evidence as a recorded recollection under Fed. R. Evid. 803(5).

> Because the diary's contents could be presented in an admissible form at trial we may consider the diary's contents in the Bank's summary judgment motion.

*Id.* at 1037.

Similarly, in *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, the Third Circuit determined that the district court erred in refusing to consider the affidavit of one of the defendant's competitors in which he stated that his salespeople complained to him about losing sales because of defendant's discriminatory pricing.  The court explained:

> In *Williams v. Borough of West Chester*, 891 F.2d 458 (3d Cir.1989), we noted that Fed. R. Civ. P. 56(e) requires the production, at the summary

judgment stage, of evidence " 'as would be admissible at trial' ... and thus 'reduc[ible] to admissible evidence.' " *Id.* 466 at 12. We cited *Celotex v. Catrett*, however, in which the Supreme Court rejected the view that the non-moving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. 477 U.S. at 324, 106 S.Ct. at 2553. We thus concluded that hearsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present the evidence through direct testimony, i.e., in a form that "would be admissible at trial." *Williams*, 891 F.2d at 465-66 n. 12. Here, there is no indication that Spagnola's salesforce would be unavailable to testify at trial. The averments of Spagnola's affidavit are capable of proof through admissible evidence and we will consider them now on de novo review.

909 F.2d at 1542 (emphasis added).

At issue in this case are Plaintiff's log notes of a telephone conversation Plaintiff allegedly had with Chief Smith in which Smith purportedly told Plaintiff that he had had a conversation with Defendant Ficano the previous Friday, and in that previous conversation, Ficano told Smith that he [Ficano] was going to promote McClain because he needs a black female for the Detroit votes.  Plaintiff's log is clearly hearsay, but the statements in the log -- that Chief Smith told DeBiasi that he had had a conversation with Sheriff Ficano in which Ficano told Smith he was going to promote McClain because he needed a black female in the upcoming election -- if capable of proof through admissible evidence at trial, could be considered by the Court here. However, Smith's alleged statements are not capable of proof through admissible evidence at trial because Smith denies having had any such conversation with the Sheriff and denies having told Plaintiff that he had any such conversation. At his deposition he was questioned at length about

the matter and he testified as follows:

Q:     Do you recall in having a conversation with Mr. DeBiasi wherein you told him that -- this is his statement -- we then discussed -- and here again, we're at Logbook No. 9, 1648 to 52. We then discuss, then discussed the fact -- we being you and he -- we discussed the fact that last Friday the sheriff said he was going to promote Pam McClain because he needed a black female for the Detroit vote. Do you recall having such a conversation with Mr. DeBiasi to that effect?

A:     No.

Q:     Are you saying you don't recall or it never happened?

A:     **<u>I know that there was never a conversation between myself and the sheriff [where] he indicated that to me</u>**. Those conversations were between Dave and I.

Q:     Okay. As I understand your question, your answer--

A:     Maybe I don't understand your question.

Q:     Sure, sure. This is David DeBiasi's handwritten notes, and --

A:     Referencing a conversation with me.

Q:     Yes. And it states we, being you and Mr. DeBiasi, then discussed the fact that last Friday, the sheriff said he was going to promote Pam McClain because he needs a black female for the Detroit vote.

        **Do you recall making such a statement or statements to that effect to Mr. DeBiasi?**

**A:     No.**

Q:     Is it that you don't recall or you didn't make those statements?

A: **I didn't make that statement because I never had that conversation with the sheriff.**

[Smith Dep., pp. 28-29.]

Thus, unlike the statements of the hearsay declarants in *Feeser* and *Fraser* who could provide first-hand testimony at trial regarding what they said in their out-of-court statements, since Smith has denied making the statements attributed to him by Plaintiff, the statements are not capable of proof at trial through his first-hand testimony. They are inadmissible hearsay statements that may not be considered by the Court in deciding Defendants' motion for summary judgment.

Plaintiff argues, however, that because Chief Smith is a supervisor, his statements should be deemed nonhearsay under Fed. R. Evid. 801 (d)(2)(D), thereby permitting the Court to consider the imbedded nonhearsay admission of Sheriff Ficano. In support of this argument, Plaintiff relies upon *Carter v. University of Toledo*, 349 F.3d 269 (6th Cir. 2003).

In *Carter*, the plaintiff, an African-American, sued her former employer, the University of Toledo, alleging that the university failed to renew her contract as a visiting professor because of her race. In opposing the defendant's motion for summary judgment, Carter offered -- as both direct evidence of discrimination and circumstantial evidence of discriminatory pretext -- statements allegedly made to her by Dr. Earl Murry, the Vice Provost of the University, in a telephone conversation they had while contract renewal was pending. Carter claimed that Murry told her in that telephone conversation

that the college of education consisted of "a bunch of racists" and that the dean of the college of education was "trying to whitewash the faculty." (Murry denied making the statements.)

Murry's duties as Vice Provost included acting as chief negotiator for the faculty's collective bargaining agreements, coordinating faculty recruiting, hiring, training, and orientation, advising the Provost on tenure and promotions, reviewing salary matters, and ensuring compliance with affirmative action requirements. Murry, however, was not the decision maker with regard to the decision not to rehire Carter as a visiting professor in the college of education.

The parties disputed whether Murry's comments were admissible as nonhearsay under Fed. R. Evid. 801(d)(2)(D) as "statement(s) by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." The university's position was that only statements made by declarants who are direct decision-makers concerning the adverse employment action at issue can qualify as nonhearsay under Rule 801(d)(2)(D). Since it was undisputed that Murry was not the decision-maker with regard to the non-renewal of Carter's contract, the university argued that his statements did not qualify as nonhearsay under the Rule and, hence, could not be considered on summary judgment.[7]

_____

[7] The hearsay/nonhearsay nature of the statements was discussed only in connection with the plaintiff's proffer of the statements as circumstantial pretext evidence, not with regard to whether they constituted direct evidence of discrimination because the Sixth Circuit found that "even if Murry's comments are admissible as

The Sixth Circuit examined its prior decisions in this area of law and from that examination determined that whether a statement qualifies as nonhearsay under Rule 801(d)(2)(D) goes beyond simply determining if the declarant is a direct decision-maker with regard to the adverse employment action. *Id.* at 275. Rather, to determine whether a statement qualified as nonhearsay under the Rule, the Court instructed courts to examine the scope of the declarant's employment and determine whether the declarant has the ability to influence a personnel decision. *Id.* "Being a direct decision-maker, of course, constitutes strong proof that a statement was made within the scope of employment, but the "scope of employment" criterion extends beyond decision-makers." *Id.*

The Court found that Murry's comments in *Carter* were within the scope of his employment because

> [a]lthough Murry did not have direct authority to decide whether Carter's appointment was renewed, his oversight of the affirmative action process at the University places his statements concerning the racial composition of the workforce within the ambit of his authority. Indeed, Murry testified that he ensures that the deans comply with affirmative action requirements when hiring faculty.

349 F.3d at 276.

---

nonhearsay, they do not constitute direct evidence of discrimination" since "Murry was not a decision-maker with regard to Carter's visiting professorship," and "comments made by individuals who are not involved in the decision-making process regarding the plaintiff's employment do not constitute direct evidence of discrimination." 349 F.3d at 273 (citing *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 433 (6th Cir. 2002)).

In the instant case, Smith's deposition testimony makes clear that Smith had no influence over the decision to promote Pam McClain to commander. As noted above, Smith testified that he was not involved in posting the commander's position, nor was he involved in the interview process or assist the sheriff in developing criteria that would be used to select the commander. [Smith Dep., p. 10]. More importantly, Smith testified that he did not have the ability to influence Sheriff Ficano as to whom he appointed to a commander's position. *Id.* at 59. He testified that Ficano never asked him for his preference or for any formal input as to the commander's position filled by McClain and, in fact, Ficano even appointed a commander assigned to work directly under Smith's command without any input at all from Smith. *Id.* at 23, 24. Smith said that at the relevant time, he was not "in the loop" because he did not work in the same physical location as the sheriff and because "the sheriff and I ha[d] disagreements. . . relative to a commander that he appointed years ago and I disagreed with it. . . and I was told quite bluntly that it's his decision. And I didn't agree with that appointment and that kind of has [had] ramifications and somewhat bitter feelings, nothing personal. But in terms of me having influence into who commanders are, it's limited. . . ." *Id.* at 59-60.

Unlike the declarant in *Carter*, in the present case, Smith did not have oversight of the promotion process nor has Plaintiff demonstrated that personnel decisions were within the scope of Smith's employment. There are simply no record facts from which this Court can conclude that Smith's statements fall within the scope of Fed. R. Evid.

802(d)(2)(D).  The statements are inadmissible hearsay.  Therefore, the Court cannot consider Smith's statements -- or the imbedded statement allegedly made by Sheriff Ficano to Smith -- in deciding Defendants' motion for summary judgment.

DeBiasi also claims that Chief Smith and Undersheriff Watts told Lieutenant Gerard Grysko that Sheriff Ficano was going to promote Pam McClain to curry the favor of black voters in the County Executive election.  In support of this claim, DeBiasi points to the deposition testimony of Lieutenant Grysko.  However, DeBiasi does not claim -- and Grysko did not testify -- that Smith and Watts said that Sheriff Ficano told them this. The best characterization of Grysko's testimony was that this was Smith and Watts' opinion of the matter.  Specifically, Grysko testified in his deposition that he had heard "rumors" from "good sources in the department" --  rumors he said he first heard from Wayne Wolf or a member of Wolf's "crew" in the registry and special transportation unit and then added that he also heard them from Chief Smith and Undersheriff Watts -- that Pam McClain was going to be promoted because she was a black female.  *See* Grysko Dep., pp.  31-32.  Grysko later clarified his testimony and said that after he heard this "rumor" from Wayne Wolf, he confronted Undersheriff Watts with it but that all that Watts said was that "he didn't know what I was talking about, that I was crazy."  *Id.* at 33.  In any event, Grysko admitted, however, that he never talked to, or heard this from, Sheriff Ficano: "I only know what [other] people told me."  *Id.*

Even if Plaintiff could overcome the hearsay nature of Grysko's testimony, the

substance of this evidence is nothing more than rumor and opinion.  It is well-settled that "direct evidence of discrimination cannot be based on rumors, conclusory allegations, or subjective beliefs."  *Hein v. All America Plywood Co., Inc.*, 232 F.3d 482, 488 (6th Cir. 2000); *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 n. 4 (6th Cir. 1992).

The foregoing discussion makes clear that Plaintiff has not presented direct evidence of discrimination.  Therefore, to make out a *prima facie* case, Plaintiff will have to satisfy the *McDonnell Douglas/Burdine* standards.

b.      Application of the *McDonnell Douglas* Paradigm

Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973), to set forth a *prima facie* case of discrimination based on a failure to promote, a plaintiff must show: (1) he is a member of a protected class; (2) he applied and was qualified for promotion; (3) he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions.  *Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir.2003).

In Title VII "reverse discrimination" cases where, as here, a member of the majority is claiming discrimination on the basis of race, the Sixth Circuit has held that to satisfy the first prong of the *McDonnell Douglas* test, the plaintiff must demonstrate "background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority."  *Grizzell v. City of Columbus, Div. of*

*Police,* 461 F.3d 711, 719 (6th Cir. 2006); *Zambetti v. Cuyahoga Cmty. College*, 314

F.3d 249, 255 (6th Cir.2002) (quoting *Murray v. Thistledown Racing Club, Inc.*, 770

F.2d 63, 67 (6th Cir.1985)); *see also Sutherland*, 344 F.3d at 614-15.[8]    Under the fourth

prong, Plaintiff must show that the he was treated differently than other similarly-situated

employees who were not members of the protected class. *Zambetti, supra.*

Once a plaintiff establishes a *prima facie* case of discrimination, the burden of

production then shifts to the defendant to articulate some legitimate, nondiscriminatory

reason for the defendant's action.  *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir.2004). If

the defendant carries this burden, the plaintiff must prove that the legitimate reasons

offered by the defendant were in fact a pretext for discrimination.  *Id*. at 414-15.

Defendant concedes, for purposes of this motion, that Plaintiff can establish that as

a white male, he was a protected class member who was qualified for the appointment to

the commander's position that was awarded to Lieutenant McClain, an African-American

female.  Defendant, however, argues that Plaintiff cannot establish the first and fourth

prongs of the modified *McDonnell Douglas* framework.  Defendant contends that

Plaintiff cannot demonstrate background circumstances showing that Wayne County was

the unusual employer that discriminated against the majority nor can he establish that he

was treated differently than similarly-situated minority employees.

(i)    <u>"Background Circumstances"</u>

_____

[8] Michigan does not require these "background circumstances."  *See Lind v. City of Battle Creek*, 470 Mich. 230, 681 N.W.2d 334 (2004).

The Sixth Circuit has not developed a bright line test for what constitutes "background circumstances" for the purpose of the first *McDonnell Douglas* prong in a reverse discrimination case. Therefore, the Court looks to prior decisions for guidance.

In *Zambetti v. Cuyahoga Community College*, 314 F.3d 249 (6th Cir.2002), the court found inadequate Plaintiff's evidence that the community college police chief disregarded the Selection Advisory Committee's recommendation only the three times the plaintiff was not promoted because no evidence was presented as to how many times the committee recommended the hiring of someone with less seniority. 314 F.3d at 257. The court also determined that no inference could be drawn from the fact that the chief hired only one white person for ten to fifteen vacancies in six years because no evidence was presented concerning the racial composition of the applicant pools for those positions. *Id.* Nonetheless, the court found sufficient evidence to create an issue of fact as to the "background circumstances" prong because the chief was himself African-American. "This is sufficient, in our opinion, to satisfy *Murray*'s "background circumstances" requirement." *Id.*

The composition of the workforce and the sex of the plaintiff's supervisor were similarly held to constitute sufficient background circumstances to satisfy the first prong of the *McDonnell Douglas* test in *Turner v. Grande Pointe Healthcare Community*, 2007 WL 2601386 (N.D. Ohio Sept. 10, 2007), a reverse gender discrimination case. In *Turner*, the court found that the fact that the majority of the workforce and management

at Grande Pointe, as well as all of the decision makers in the plaintiff's case, were females "support[s] the suspicion that the defendant is the unusual employer who discriminates against the majority." *Id.* at * 13.

The court looked to statistical evidence in *Sutherland v. Michigan Dept. of Treasury*, 344 F.3d 603 (6th Cir.2003). In that case, the court found that the plaintiffs presented significant evidence in the form of statistical data tending to show that in the years prior to the employment decisions at issue, the Treasury Department considered race in making employment decisions:

> Plaintiffs-Appellants provided a substantial amount of statistical data relating to the Treasury Department's promotion and hiring patterns over the past few decades as they relate to race. For example, Plaintiffs-Appellants point out that in 1983, blacks held 11.5% of the auditor positions in Treasury, even though blacks represented only 5.2% of the qualified labor force in Michigan. In addition, they assert that, from 1980 through July 1989, protected class members, including racial minorities, females and disabled people, represented seventy-seven percent of all new hires in the Audit Division of Treasury. Furthermore, Plaintiffs-Appellants claim that as recently as March 2000, a roster of the audit Division indicated that protected class members held seventy-one percent of the auditor positions in the Michigan offices of the Audit Division. Specifically, the March 2000 roster indicates that black employees held twenty-nine percent of the Audit Division positions in Michigan, even though a 1990 census, the most recent census prior to the March 2000 roster, demonstrated that blacks represented only 7.7% of the qualified labor force in Michigan at that time. Based on this significant statistical evidence, we believe that Plaintiffs-Appellants at least raised a genuine issue of material fact with respect to whether background circumstances tended to show that Treasury is the "unusual employer who discriminates against the majority.

344 F.3d at 615-16. *See also, Murray v. Thistledown Racing*, 770 F.2d 63, 68 (6th Cir.

1985) (suggesting that reverse discrimination plaintiff might have satisfied the "background circumstances" prong of the test had he been able to show that the employment practices were grounded in an affirmative action program).

By contrast, in *Rivette v. United States Postal Service*, 625 F. Supp. 768 (E.D. Mich. 1986), the court found insufficient statistical support in the plaintiff's evidence to indicate that the Postal Service in general or administrators in its Detroit offices discriminated against white employees. The court explained:

> Plaintiff listed the number of black and white employees promoted to level 17 and above in all Detroit offices for the years 1978 through 1981. Those figures indicate that in 1979, an equal number of blacks and whites were promoted to level 17 or above. In 1980 and 1981, considerably more blacks were promoted at the upper levels than whites. Plaintiff has failed, however, to provide any statistics on the racial make-up of the Detroit offices as a whole. Thus, the court has no way of determining whether the increase in promotions of blacks at the upper levels was in any way disproportionate. Demographic changes over the years might well have led to an increased number of black employees at all levels working in the City of Detroit, while white employment figures within the city dwindled as they opted to work in suburban locations.

625 F. Supp. at 772.

In this case, Plaintiff points to the racial and sexual composition of the pool of applicants for the position of commander during Defendant Ficano's tenure as Wayne County Sheriff and the race and sex of the individuals ultimately appointed by Sheriff Ficano. The evidence presented shows that from 1992 through 2002, there were 45

applicants[9] for 9 commander positions.[10]  One of the appointments during this time period

-- the appointment of Lawrence Meyer, a white male, to the position of police

---

[9]  Plaintiff's Supplemental Response Brief Exhibit 5 shows a total of 59 applicants.  Plaintiff has included in his total applicant calculation the total number of applicants who were eligible and applied for commander positions in 1992, 1996, 2000, 2001, 2002 and 2003. [*See* Plaintiff's Supplemental Response Exhibits 4 and 5.] Presumably, Plaintiff includes the 2003 eligible applicants because, although this action centers around Defendant's failure to promote him to commander in 2002, Plaintiff remained an employee of Wayne County Sheriff's Department until his retirement on May 1, 2004.  However, Ficano was elected County Executive in 2002 and left his position as Wayne County Sheriff at the end of that year.  He was no longer the sheriff in 2003.  Further, no evidence has been presented that any commander positions were posted after March 2002 or that any commander appointments were made -- by Sheriff Ficano or his successor, Warren Evans -- after the March 2002 appointment of Pamela McClain.  Therefore, the Court will not consider the 14 individuals listed as 2003 applicants on page 7 of Plaintiff's Supplemental Response Ex. 4.

[10]  In Defendants' Supplemental Response to the Court's Request for Additional Discovery, [attached to Plaintiff's Supplemental Response Brief at Ex. 4], Defendants provided a chart of "Persons Holding Command Positions" during Sheriff Ficano's tenure.  Included in that chart were five persons who were appointed to the position of commander pursuant to the provisions of an earlier collective bargaining agreement under which the Sheriff had no discretionary appointment authority with respect to promotions to commander.  Article 16, Section 4, ¶ C of that earlier CBA provided, "The Sheriff must promote the highest person on the promotional eligibility list." [*See* Plaintiff's Supplemental Response Brief, Ex. 1].  Therefore, they are not included in the appointment total.  Additionally, two individuals on this chart, Carl Zahn and Richard Fenton, listed as appointments effective in 1996 and 1997, respectively, were not Ficano discretionary appointments, either.  Carl Zahn previously held a position that was administratively reclassified to a "commander" position in 1996, and Richard Fenton was originally promoted to commander under the non-discretionary promotion provisions of the 1986-90 CBA.  (Fenton was subsequently appointed Chief of Police at Metropolitan Detroit Airport, an executive position, by then County Executive Edward McNamara.  In 1997, Fenton decided to leave the Airport Police Chief position and return to his previous Commander position.  (The CBA permits employees returning from executive service to return to a former position in which they had civil service status.)  Therefore, he was not "appointed" in 1997 to the commander position by Sheriff Ficano.)  Accordingly, Fenton and Zahn are not included in the list of commanders appointed during Ficano's tenure.

commander in the Warrant Enforcement Division of the Community Justice Department -

- was made by Jeriel Heard, the head of the Community Justice Department, not Sheriff

Ficano. [*See* Plaintiff's Supplemental Response, Ex. 8.]  The remaining eight

appointments to commander were made by Sheriff Ficano.

The composition of the 1992-2002 applicant pool was as follows:

| | | |
|---|---|---|
| WHITE MALES | 25 | 55.6% |
| BLACK MALES | 13 | 28.9% |
| WHITE FEMALES | 5 | 11.1% |
| BLACK FEMALES | 2 | 04.4% |
| | 45 | |

Ficano's commander appointments from 1992-2002 were as follows:

| | | |
|---|---|---|
| WHITE MALES | 0 | 0.0% |
| BLACK MALES | 5 | 62.5% |
| WHITE FEMALES | 2 | 25.0% |
| BLACK FEMALES | 1 | 12.5% |
| | 8 | |

[*See* Plaintiff's Supplemental Response Exhibits 4 and 5.]

The evidence presented by Plaintiff shows that in over ten years of discretionary

appointments, Defendant Ficano never promoted a white male to a commander's

position, even though white males made up over 55% of the applicant pool.  Indeed, in

1996 and 1999, when Plaintiff DeBiasi was previously a candidate for promotion, white

males made up nearly 70% of the applicant pool, yet Ficano promoted two black males

and a white female.  *Id.*  In 2002, when Ficano promoted Pamela McClain, 60% of the

candidate pool was white.  *Id.*  Again, Ficano promoted a minority candidate.  *Id.*

Although Plaintiff's percentages are based upon a relatively small statistical sample, the Sixth Circuit has noted that "even a small statistical sample. . . can nevertheless serve as circumstantial evidence making discrimination more likely." *Cicero v. Borg-Warner Automotive, Inc.*, 280 F.3d 579, 593 (6th Cir. 2002); *see also Kulling v. Grinders for Industry, Inc.*, 115 F. Supp. 2d 828, 839 (E.D. Mich. 2000) (finding that, although the plaintiffs' statistical analysis was not be as probative as it might have been, it nevertheless could serve to increase the likelihood that the decisions to eliminate certain positions were based on impermissible discrimination.)

In their Reply to Plaintiff's Supplemental Response, Defendants attempt to refute Plaintiff's evidence that Ficano did not promote any white males to commander with the affidavit of Carrie Skronek, the Divison Director of Employment Programs for the Wayne County Department of Personnel/Human Resources who states that personnel records show that between 1990 and 1999, six white males were appointed to "high level executive positions assigned to the Wayne County Sheriff's Department." [Skronek Aff. ¶ 2.] Ms. Skronek, however, does not state that Sheriff Ficano made these appointments and no underlying records concerning these appointments have been provided.  There is no evidence to show <u>who</u> appointed them; <u>how</u> they were appointed; <u>why</u> they were appointed; or to <u>what</u> specific positions they were appointed.  Indeed, from other evidence presented in this case, it has been shown that the County Executive can make "Department Executive" or "DE" appointments.  Former County Executive Edward

McNamara -- who was the County Executive from 1987 to 2002 made at least one

Department Executive appointment when he appointed Richard Fenton as Chief of Police

at the Metropolitan Detroit Airport.  *See* footnote 10, *supra*; *see also* Plaintiff's first

Response Brief, Ex. 19.  Fenton's job classification, like that of the individuals named in

Ms. Skronek's affidavit, was "DE5."

In any event, the Court believes that the evidence presented by the parties at least

raises a question of fact with respect to whether background circumstances raise the

suspicion that Defendant Wayne County is the unusual employer who discriminates

against the majority.[11]

(ii) Similarly-Situated Candidates for Commander Position

Defendants also argue that Plaintiff cannot demonstrate that he was similarly

situated to Pamela McClain, the successful candidate for promotion to commander in

March 2002, because they reported to different persons, had different and diverse work

assignments, different educational background, and different personalities.  Defendants'

argument is misplaced for two reasons.

First, Defendants argue that DeBiasi cannot show that he and McClain were

"similarly situated in all material respects," as required under controlling Sixth Circuit

law, because, prior to being considered for promotion,  they reported to different

_____

[11]  As indicated above, this "background circumstances" requirement only applies
to Plaintiff's federal claims. "Background circumstances" are not required under the
Michigan Elliott-Larsen Act.  *See Lind v. City of Battle Creek*, 470 Mich. 230, 681
N.W.2d 334 (2004).

supervisors.  However, application of this factor in a failure to promote case is inapposite.

What matters is not who supervised them prior to promotion, but whether the person who

considered them for promotion was the same person.

The remainder of the "differences" set forth by Defendant are also inapposite as

they go to a comparison of Plaintiff's and McClain's qualifications.  As this Court held in

*Hoffman v. Sebro Plastics, Inc.*, 108 F. Supp. 2d 757 (E.D. Mich. 2000), it is

impermissible, under controlling Sixth Circuit law, to compare the qualifications of a

plaintiff and similarly-situated employees at the *prima facie* case stage.  In *Hoffman*, the

defendant argued that the plaintiff had not established that she and Eric Johnson, the

assistant foreman who received the promotion to the midnight shift foreman position she

sought, were not "similarly situated" because she had not established "that she was more

qualified than Johnson" and because she worked for 5 ½ years on the day shift while

Johnson was an assistant foreman on the midnight shift. The Court held, "[T]hese are

issues to be raised in rebuttal as legitimate non-discriminatory reasons. As the *Cline* court

explained, 'forcing plaintiffs to make such a proof at the *prima facie* stage defies the very

purpose of the production stage and the overall sequence of *McDonnell Douglas*.'"  108

F. Supp. 2d at 773 (quoting *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 665 (6th

Cir. 2000)).

The test of similarly-situated in the failure to promote context is instead whether

the plaintiff and the promoted person he compares himself with "both had experience

which could make them viable candidates for [the position sought]." *Anthony v. BTR Automotive Sealing Sys., Inc.*, 339 F.3d 506, 516 (6th Cir. 2003). Applying this standard, it is clear that both Plaintiff DeBiasi and Pamela McClain were "viable candidates" for Commander. The relevant factors are that both DeBiasi and McClain were qualified for promotion, they were both placed on the eligibility list, and were both considered for promotion by the same person, Defendant Ficano. Accordingly, the Court finds that the "similarly-situated" element is satisfied.

D.    PRETEXT

Having concluded that Plaintiff has raised a genuine issue of material fact with respect to his *prima facie* case, the Court turns to the question of whether Defendants have articulated a legitimate, non-discriminatory reason for choosing Pamela McClain over David DeBiasi for promotion to the commander's position in March 2002. The Court finds that Defendants have satisfied their burden in this regard. Defendants' preferred reason for selecting McClain over DeBiasi and the other candidates was that McClain presented the best overall qualifications. Specifically as compared to DeBiasi, Defendants point out that McClain worked in a number of different units within the Sheriff's Department over the course of her 15-year career while Plaintiff DeBiasi spent almost all of his career in the Narcotics Unit. McClain also had a law degree; DeBiasi did not. McClain also attended more than a dozen training seminars that Plaintiff did not attend. Consequently, after reviewing the candidates' personnel files and what they had

done in the department, and after personally interviewing each of them, Sheriff Ficano selected McClain for the promotion because she had the "widest breadth of experience and education." [*See* Ficano Dep., p. 12.]

The burden of production, therefore, shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reasons offered by Defendants were in fact a pretext for discrimination. *Imwalle v. Reliance Medical Prod., Inc.* ___ F.3d ___, 2008 WL 340450 (6th Cir., Feb. 8, 2008); *E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 862 (6th Cir. 1997) (citing *Burdine*, 450 U.S. at 252-53, 101 S.Ct. at 1093). Plaintiff can establish pretext by demonstrating that the reasons offered by the defendant: (1) has no basis in fact; (2) did not actually motivate the decision not to promote him, or (3) was insufficient to warrant the decision not to promote him. *Zambetti*, 314 F.3d at 258 (citing *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994)).

A showing that a proffered reason had "no basis in fact" consists of evidence establishing that the proffered reasons for the employer's decision never happened, or are factually false. *Manzer*, 29 F.3d at 1084. To make a showing that the proffered reasons "did not actually motivate the employer's conduct," the plaintiff must present evidence "which tend[s] to prove that an illegal motivation was *more* likely than that offered by the defendant." *Id.* Finally, a showing that the proffered reasons were "insufficient to motivate the employer" consists of evidence that other employees, particularly employees not in the protected class, were not treated the same way, even though they engaged in substantially identical conduct. *Manzer,* 29 F.3d at 1084.

35

According to the *Manzer* court, the first and third types of rebuttals -- that the reason offered by the employer has no basis in fact or was insufficient to warrant the employer's decision -- "are direct attacks on the credibility of the employer's proffered motivation for firing the plaintiff, and if shown, provide an evidentiary basis for what the Supreme Court has termed a 'suspicion of mendacity,'" sufficient to withstand summary judgment. *Id.*[12] As for the second *Manzer* option -- that the employer's articulated reason did not actually motivate the employer's actions -- the Sixth Circuit has held,

> If the bare bones elements of plaintiff's *prima facie* case were sufficient to make this showing, . . . the entire "burden shifting" analysis of *McDonnell Douglas* and its successors would be illusory. . . . Accordingly, we hold that, **in order to make this type of rebuttal showing, the plaintiff may not rely simply upon his prima facie evidence, but must, instead, introduce additional evidence of [prohibited] discrimination.**

---

[12] Michigan's law regarding pretext law differs from federal law in this regard in that it requires "pretext plus." Under Michigan law,

> [D]isproof of an employer's articulated reason for an adverse employment decision defeats summary disposition only if such disproof also raises a triable issue that discriminatory animus was a motivating factor underlying the employer's adverse action. In other words, plaintiff must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for . . . discrimination. Therefore, . . . in the context of summary disposition, a plaintiff must prove discrimination with admissible evidence, either direct or circumstantial, sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff.

*Malady v. Lytle*, 458 Mich. 153, 579 N.W.2d 906, 916 (1998) (footnotes omitted); *see also Town v. Michigan Bell Telephone Co.*, 455 Mich. 688, 568 N.W.2d 65, 68-69 (1997).

*Gray v. Toshiba Am. Consumer Prods.*, 263 F.3d 595, 600 (6th Cir. 2001) (quoting *Manzer*, 29 F.3d at 1084) (emphasis added).

Regardless of which rebuttal method is employed, the plaintiff retains the ultimate burden of producing "sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against him." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir.2003).

Plaintiff in this case challenges Defendants' stated reason that McClain had "better qualifications" as pretextual. He claims that Defendants' reliance upon McClain's law degree is misplaced because McClain has not passed the state bar examination and has never practiced law. Plaintiff further points out that Defendants have failed to explain why a juris doctorate degree is more significant than his attendance at the FBI National Academy.

The Supreme Court has stated that "qualifications evidence may suffice, at least in some circumstances, to show pretext." *Ash v. Tyson Foods, Inc*., 546 U.S. 454, 126 S.Ct. 1195, 1197 (2006). In *Bender v. Hecht's Department Stores*, 455 F.3d 612, 626 (6th Cir.2006), *cert. denied*, 127 S.Ct. 2100 (2007), the Sixth Circuit held that the probative value of qualifications evidence in terms of demonstrating pretext must be balanced against "the principles that employers are generally 'free to choose among qualified candidates,' [quoting] *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir.1987), and that '[t]he law does not require employers to make perfect decisions, nor forbid them from making

decisions that others may disagree with,' [quoting] *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir.1996)." Thus, "[w]hether qualifications evidence will be sufficient to raise a question of fact as to pretext will depend on whether a plaintiff presents other evidence of discrimination." *Bender*, 455 F.3d at 626. The court explained:

> In the case in which a plaintiff does provide other probative evidence of discrimination, that evidence, taken together with evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment. . . . On the other hand, in the case in which there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former. In negative terms, evidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient, in and of itself, to raise a genuine issue of fact that the employer's proffered legitimate, non-discriminatory rationale was pretextual.

*Id.* at 627 (citation omitted and emphasis added).

Plaintiff here has not shown that his qualifications were "so significantly better than [McClain's] qualifications that no reasonable employer would have chosen the latter applicant over the former." *Id.* Construed in the light most favorable to him, Plaintiff's argument at best is that he and McClain had equal qualifications. This is not sufficient to establish pretext under *Bender*.

Plaintiff's only other admissible pretext evidence is the same evidence that he used to make out his *prima facie* claim of reverse discrimination -- Ficano's alleged "pattern" of not promoting white male officers to commander positions even though white males

comprised the majority of the candidates for promotion. While statistical evidence may be used to establish pretext, here we do not have any true "statistical" evidence. No expert testimony nor any standard-deviation methodology has been presented. "For statistics to be valid and helpful in a discrimination case, 'both the methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of discrimination.' " *Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 944 (6th Cir.1987). All that has been presented in this case is evidence of a perceived numerical pattern with regard to eight discrete promotions over ten years off of six different eligibility lists presenting a combined pool of 45 candidates. However, this numerical pattern does not establish that the promotions, in general -- or the promotion of McClain, in particular -- were more likely than not the result of unlawful discrimination.

As the court explained in *Barnes v. Gencorp, Inc.*, 896 F.2d 1457 (6th Cir. 1990), *cert. denied*, 498 U.S. 878 (1990), when a plaintiff's statistics indicate a disproportionate discharge or hire rate for a protected group, "there are three possible explanations for the discrepancy: the operation of legitimate selection criteria, chance, or the defendant's bias." *Id.* at 1468 (citing D. Baldus and J. Cole, *Statistical Proof of Discrimination* 291 (1980) and *Palmer v. Schultz*, 815 F.2d 84, 90-91 (D.C. Cir. 1987)).

> When a plaintiff demonstrates a significant statistical disparity in the discharge [or hiring] rate, he or she has provided strong evidence that chance alone is not the cause of the discharge [or hiring] pattern. ***The statistics do not and cannot determine whether the more likely cause is the defendant's bias or a legitimate selection criterion.***

*Barnes* at 1468-69 (emphasis added).

Since Plaintiff's numerical evidence of past promotions does not establish that it was more likely than not that the cause of the perceived promotion pattern was intentional discrimination, the evidence is insufficient to establish that Defendants' proffered non-discriminatory reason for promoting Pamela McClain instead of Plaintiff was pretextual. *See Barnes* at 1469.[13]

## CONCLUSION

For all of the reasons set forth above in this Opinion and Order,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment is GRANTED. Accordingly,

IT IS FURTHER ORDERED that Plaintiff's Complaint be, and hereby is, DISMISSED, in its entirety, with prejudice.

---

[13] To the extent that Plaintiff also points to the evidence of what Plaintiff recorded in his personal log -- that Smith told him in a telephone conversation that he had had a conversation with Defendant Ficano in which Ficano told Smith that "he [Ficano] was going to promote McClain because he needs a B/F [black female] for the Detroit votes ---- as set forth above, this evidence is inadmissible hearsay and, as such, may not be considered here, particularly since Smith has denied these conversations. As for Chief Smith's testimony and emails to DeBiasi about McClain's hiring, these present nothing more than evidence of Smith's opinion about whom Ficano was going to hire. It is well-settled that opinions expressed by co-workers who have no direct involvement in the decision-making processes have no probative value as to the employer's alleged discriminatory intent. *Haley v. General Elec. Co.*, 3 Fed. Appx. 240, 248 (6th Cir. 2001); *see also Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 (6th Cir. 1986), *cert. denied*, 480 U.S. 919 (1987) (personal beliefs, conjecture and speculation are insufficient to support an inference of age discrimination.); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992) (holding that rumors, conclusory allegations and subjective beliefs which are wholly insufficient evidence to establish a claim of discrimination as a matter of law).

s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated:  March 11, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 11, 2008, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager